UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| TIMOTHY WAYNE UPTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 5:18-cv-1576-GMB |
| | ) |
| ANDREW M. SAUL,[1] Commissioner, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Timothy Wayne Upton filed an application for disability insurance benefits and an application for supplemental security income in 2014. His alleged disability onset date is August 4, 2014. Upton's applications for benefits were denied at the initial administrative level. He then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on May 9, 2017 and denied Upton's claims on July 6, 2017. Upton requested a review of the ALJ's decision by the Appeals Council, which declined review on July 27, 2018. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of July 27, 2018.

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 5, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Saul is substituted for Nancy Berryhill as the proper defendant in this case.

Upton's case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Based on its review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be REVERSED and REMANDED to the ALJ for proceedings consistent with this opinion.

## I. STANDARD OF REVIEW

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence."

*Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Upton bears the burden of proving that he is disabled, and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform her former occupation?
(5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

"An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III. FACTUAL BACKGROUND

Timothy Wayne Upton lives in Hazel Green, Alabama with a roommate and her 14-year-old daughter. R. 57. He was 49 years old at the time of the ALJ's decision. R. 20 & 191. At the hearing before the ALJ, Upton asserted that a heart condition, fatigue, and post traumatic stress disorder prevent him from working. R. 66. On his disability report, Upton recorded that his heart condition, anxiety, depression, shortness of breath, and inability to sit or stand for long periods of time prevent him from working. R. 245. He testified at the hearing before the ALJ that he had feelings of hopelessness, helplessness, and thoughts of suicide. R. 78. He tried counseling sessions, but he found the sessions to be too painful. R. 78.

Upton obtained his GED and has had some vocational training. R. 58. His past employment has included positions as a locksmith, cashier, security officer,

customer service representative, taxi driver, and airport shuttle driver. R. 62 & 246. Past employers include Shell Food Mart and DirectTV. R. 246. He last worked in August 2014. R. 246.

The ALJ held a hearing in Upton's case on May 9, 2017. R. 53. During the hearing, the ALJ posed the following hypothetical to a Vocational Expert ("VE"):

> Please consider an individual the same age, education, and work experience as Mr. Upton. For hypothetical #1, I'd like you to consider that such an individual can lift and carry 50 pounds occasionally, and 25 pounds frequently; can stand and/or walk with normal breaks for a total of six hours in an eight-hour workday; sit with normal breaks for a total of six hours in an eight-hour workday; pushing and pulling is the same as for lifting and carrying; frequently climb ramps and stairs; never climb ladders, ropes and scaffolds; frequently balance, occasionally stoop, occasionally kneel, occasionally crouch, occasionally crawl; avoid concentrated exposure to extreme heat; avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation; avoid all exposure to hazards, such as moving unguarded machinery, unprotected heights, frequently handle, frequently finger, frequently feel.

R. 84. The VE testified that this hypothetical individual could perform Upton's past work as a cashier, locksmith, security guard, car deliverer, and customer service representative. R. 85. The VE also testified that this individual could perform other work in the national economy. R. 85. Specifically, he could work as a bagger, laundry worker, and assembler. R. 85. The ALJ asked whether this hypothetical individual could perform work if limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently. R. 85. The VE explained that he could still work as a locksmith, security guard, cashier, car deliverer, and customer service

6

representative. R. 86. This individual also could perform work as a marker, router, and bottling wine attendant. R. 86.

The ALJ also posed the following hypothetical:

Let's go hypothetical #1, and then I'm going to add that such an individual can understand, remember and carry out short one to three-step tasks. Can frequently interact with the public, coworkers and supervisors, and can adapt to infrequent well-explained changes.

R. 87. The VE testified that this individual could perform the past relevant work of cashier and also work as a marker, router, bottling wine attendant, bagger, laundry worker, and assembler. R. 87. The VE testified that this individual could not find work if he would be off task 20% of the day, if he would be absent two days per month, or if he would have to lie down and elevate his lower extremities for 50% of the day outside of scheduled work breaks. R. 88. The VE also testified that the hypothetical individual could not find work if he were required to lie down and elevate his legs for 40% of the work day or if he needed to lie down and elevate his legs for 45 minutes after a period of exertion. R. 89.

The ALJ issued her decision on July 6, 2017. R. 20. Under step one of the five-step evaluation process, the ALJ found that Upton has not engaged in substantial gainful activity since August 4, 2014. R. 13. The ALJ concluded that Upton suffers from the severe impairment of ischemic heart disease under 20 C.F.R. § 404.1520(c) and § 416.920(c). R. 13. The ALJ concluded at step three of the analysis that none of Upton's impairments satisfy or medically equal the severity of

one of those listed in the applicable regulations. R. 15.

At steps four and five, the ALJ found that Upton has the residual functional capacity ("RFC") to perform medium level work with some limitations.[2] Specifically, the ALJ determined the following:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work. . . . He can lift and/or carry and push and/or pull 50 pounds occasionally, and 25 pounds occasionally. He can sit or stand and/or walk six hours in an eight-hour workday with normal breaks. He can frequently climb ramps and stairs but never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. He should avoid concentrated exposure to extreme heat and/or cold. He should avoid concentrated exposure to fumes, odors, gases, and poor ventilation. He should avoid all exposure to moving unguarded machinery, and unprotected heights. He can frequently handle, finger and feel objects with both hands.

R. 15. Ultimately, the ALJ determined that Upton is able to perform past relevant work as a cashier, locksmith, security guard, car deliverer, and customer service representative. R. 19. Therefore, the ALJ concluded that Williams is not disabled within the meaning of the Social Security Act. R. 20. Based on these findings, the ALJ denied Williams' claims. R. 20.

## IV. DISCUSSION

Upton presents four issues on appeal: (1) the ALJ abused her discretion in

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

finding that Upton did not meet any of the Listings; (2) the ALJ did not properly evaluate, individually or in combination, Upton's complaints; (3) the ALJ erred in the weight she assigned to physicians' opinions; and (4) the ALJ's findings are not supported by substantial evidence. As to the first contention, the ALJ has not provided the court with sufficient reasoning to determine whether she properly applied the law. Accordingly, the decision of the Commissioner is due to reversed and remanded, and any discussion of the remaining arguments is pretermitted.

Upton contends that he satisfies the criteria for depression (Listing 12.04), anxiety disorder (Listing 12.06), and post traumatic stress disorder (Listing 12.15). Doc. 11 at 16. The listings of impairments in the Social Security Regulations identify impairments of such severity that they prevent a person from engaging in gainful activity. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1. If a claimant meets a listed impairment or otherwise establishes an equivalence, the regulations establish that the claimant has a disability. *See* 20 C.F.R. § 416.920(d). However, if a claimant manifests only some of the criteria for an impairment, then the claimant is not considered to be disabled, no matter how severe the impairment. *Nichols v. Comm'r of Soc. Sec.*, 679 F. App'x 792, 795 (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

To meet the requirements of a Listing, a claimant must "have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R.

§ 404.1525(d). In other words, to "meet a Listing, the claimant must (1) have a diagnosed condition that is included in the listings and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and the duration requirement." *Proctor v. Comm'r of Soc. Sec.*, 2016 WL 4473187, at *4 (M.D. Fla. Aug. 25, 2016). The burden is on the claimant to show that his impairments meet a listed impairment. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). The regulations also provide that the claimant "must furnish medical and other evidence that [the Commissioner] can use to reach conclusions about his medical impairment(s)." 20 C.F.R. § 404.1512(a). Critically, the claimant's impairment must "meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

For depression (Listing 12.04), anxiety disorder (Listing 12.06), and post traumatic stress disorder (Listing 12.15), the term "specified criteria" refers to three individual paragraphs. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. These paragraphs are designated as "paragraph A," "paragraph B," and "paragraph C." Paragraphs A, B, and C function the same for depression, anxiety disorder, and post traumatic stress disorder. To satisfy one of these listings, a claimant must show that he meets the criteria of paragraph A and paragraph B or, alternatively, the criteria of paragraph A and paragraph C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06. The

paragraph A criteria set forth clinical findings that medically substantiate a mental disorder. *See* Listing 12.00A. The criteria in paragraphs B and C describe functional limitations that would prevent any gainful employment. As discussed above, the paragraph B criteria are the same for all three of the listings Upton invokes.

To satisfy the paragraph B criteria, the claimant must establish that he has an extreme limitation in one, or a marked limitation in two, of certain areas of mental functioning. The listed areas are the claimant's abilities to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist or maintain pace; and (4) adapt or manage oneself. To satisfy the criteria in paragraph C, a claimant must establish a mental disorder that is "serious and persistent" in that it has lasted for a period of at least two years and there is evidence of both of the following: (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (2) marginal adjustment (that is, a minimal capacity to adapt to changes in your environment or to demands that are not already part of daily life).

The court finds that ALJ's analysis of whether Upton meets one of these Listings is insufficient. *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019) (remanding case to ALJ where the ALJ provided no meaningful assessment of how the claimant's mental impairments affected his ability to work).

To begin, the ALJ's step three discussion ostensibly consists of only one sentence: "Although the claimant's impairments are 'severe,' none of them rises to the level of severity contemplated in any section of the Listings." R. 15.[3] Reading between the lines of the ALJ's opinion, however, reveals some discussion of the paragraph B criteria embedded within the ALJ's step two analysis. There, the ALJ noted that the

> first functional area is understanding, remembering, or applying information. In this area, the claimant has no limitation. He has worked in jobs that required some level of education; he has a GED (General Education Development certificate, equivalent to a high school diploma) and some post-secondary study. The next functional area is interacting with others. In this area, the claimant has no limitation. He lives with a "roommate" and gets along well with her. The third functional area is concentrating, persisting, or maintaining pace. In this area, the claimant has no limitation. His activities of daily living consist in great part of reading, watching television and playing games on the computer. The fourth functional area is adapting or managing oneself. In this area, the claimant has no limitation. He has managed his resources adequately so that his needs are met. Because the claimant's medically determinable impairments cause no more than "mild" limitation in any of the functional areas, they are nonsevere.

R. 14. Nowhere in this paragraph does the ALJ reference any medical evidence in support of her opinions. The ALJ does not tie her reasoning to a single doctor's opinion, hospital visit, or psychiatric evaluation, all of which Upton provided. She

---

[3] The ALJ also appears to conflate her step three analysis and step five analysis. Immediately following the aforementioned sentence is a bolded statement of Upton's residual functional capacity. R. 15. The ALJ does not explain why she performed the step five analysis before step four, or why this discussion seems to have been folded into the step three analysis.

12

does not even rely on the third-party function report submitted by Upton's roommate. R. 278–85. Instead, the ALJ bases her conclusory analysis partially on irrelevant facts (like Upton's employment before the alleged disability onset date) and on Upton's self-reported symptoms—even though she later discounts Upton's statements about the effects of his symptoms. R. 18.

Moreover, the ALJ acknowledged these shortcomings in her analysis. In her opinion, the ALJ noted that steps four and five "require a more detailed assessment." R. 14. But, as discussed above, this reasoning is absent from the step four analysis. The ALJ did not discuss whether Upton satisfies the Listings in the context of the RFC analysis, and she did not account for mental impairments in Upton's RFC. R. 15. Instead, she addressed only limitations from physical impairments. R. 15. And the bulk of the ALJ's RFC analysis is a recitation of Upton's subjective complaints. R. 16–18. The ALJ did reference two emergency room visits and a September 9, 2014 doctor's visit (R. 18), but did not offer an opinion about or analysis of these visits.

In addition, the ALJ assigned substantial weight to a state-agency medical consultant, but this medical consultant offered an opinion about Upton's physical residual capacity and the ALJ discussed only the consultant's conclusions about Upton's physical capacities. R. 18–19 & 94–100. Absent from the RFC analysis is any mention of the Listings for anxiety disorder, depression, or post traumatic stress

disorder. The ALJ also did not discuss any medical evidence relating to Upton's mental health. In short, the ALJ's opinion does not reveal meaningful consideration of Upton's alleged mental limitations. This omission prevents the court from concluding whether the ALJ properly applied the law. *See Schink*, 935 F.3d at 1269–70 ("As acknowledged by the ALJ in his opinion, the mental RFC assessment used at steps 4 and 5 of the process 'requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments.' Even if we assume the RFC assessment conducted by the ALJ included some silent consideration of [the claimant's] mental impairments, we have no way of knowing whether it included the 'more detailed assessment' required.").

Without more, the court simply cannot determine whether the ALJ applied the proper legal standards. *See Keeton*, 21 F.3d at 1066 ("The Secretary's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."). While the court has a duty to affirm if substantial evidence supports the ALJ's conclusions, the ALJ must direct the court to the supporting evidence and must provide sufficient rationale for her decision. "When the ALJ fails to state with sufficient clarity the grounds for [her] evidentiary decisions, [the court] will not affirm simply because some rationale might have supported the ALJ's conclusion."

*Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 732 (11th Cir. 2011) (citing *Owens v. Heckler*, 748 F.2d 1511, 1514–16 (11th Cir. 1984)) (internal quotation marks omitted). Without sufficient reasoning to determine whether the ALJ conducted the proper legal analysis, this court has no choice but to reverse. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (noting that reversal is required where the ALJ failed to provide the reviewing court with sufficient reasoning to determine whether the proper legal standards were applied).

## V. CONCLUSION

For these reasons, the court concludes that the Commissioner's decision is not based upon the proper legal standards. It is therefore ORDERED that the decision of the Commissioner denying benefits is REVERSED and this matter is REMANDED to the Administrative Law Judge for the purpose of issuing a new disability determination consistent with this opinion.

Pursuant to Federal Rule of Civil Procedure 54(d)(2)(B), Plaintiff's attorney is granted an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until 30 days after receipt of a notice to award benefits from the Social Security Administration. This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.

A final judgment will be entered separately.

DONE and ORDERED on February 19, 2020.

/s/ Gray M. Borden
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE